UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FIRTIVA CORPORATION,<br><br>                              Plaintiff,<br><br>          -against-<br><br>FREEWHEEL MEDIA, INC.,<br><br>                              Defendant. | Civil Action No. 1:21-mc-00830-KPF<br><br>Underlying case:<br>United States District Court, Eastern District of Texas (Case No. 2:21-cv-00111-JRG-RSP) |

### DEFENDANT FREEWHEEL MEDIA, INC.'S MEMORANDUM OF LAW IN OPPOSITION TO FIRTIVA CORPORATION'S RULE 45 MOTION TO COMPEL

Dated: December 6, 2021

DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Tel:     (212) 450-4000

*Attorneys for Respondent FreeWheel Media, Inc.*

## TABLE OF CONTENTS

PAGE

I.  INTRODUCTION ................................................................................................. 1

II.  BACKGROUND .................................................................................................. 1

    A.  FreeWheel ................................................................................................. 1

    B.  Funimation ................................................................................................ 2

    C.  Firtiva Accuses Funimation of Infringement ........................................... 2

    D.  Firtiva Demands FreeWheel's Most Sensitive Source Code ................... 3

    E.  FreeWheel Objects to Firtiva's Subpoena ............................................... 5

    F.  Firtiva Refuses to Narrow Its Requests or Articulate Their Relevance ................. 6

III.  LEGAL STANDARD .......................................................................................... 7

IV.  ARGUMENT ....................................................................................................... 9

    A.  The Requested Discovery Is Not Relevant .............................................. 9

    B.  Firtiva Does Not Show Any Need Justifying the Undue Burden Its  Requests Place on FreeWheel ................................................................. 14

V.  CONCLUSION .................................................................................................. 17

## TABLE OF AUTHORITIES

PAGE

**Cases**

*Aeritas, LLC v. Delta Airlines, Inc.*,
   No. 11-cv-00969-SLR, 2013 WL 454452 (N.D. Ga. Feb. 7, 2013) ........................................ 16

*Akamai Techs., Inc. v. Limelight Networks, Inc.*,
   797 F.3d 1020 (Fed. Cir. 2015) ..................................................................................... 10, 11

*Aro Mfg. Co. v. Convertible Top Replacement Co.*,
   365 U.S. 336 (1961).............................................................................................................. 10

*Ave. Innovations, Inc. v. E. Mishan & Sons Inc.*,
   No. 16-cv-3086 (KPF), 2019 WL 4857468 (S.D.N.Y. Oct. 2, 2019)...................................... 9

*Bell Atl. Bus. Sys. Servs., Inc. v. Hitachi Data Sys. Corp.*,
   No. M8-85, 1995 WL 13115 (S.D.N.Y. Jan. 13, 1995)....................................................... 16

*Berall v. Pentax of Am., Inc.*,
   No. 10-cv-5777 (LAP), 2021 WL 3934200 (S.D.N.Y. Sept. 2, 2021) ................................... 13

*Blackrock Allocation Target Shares: Series S Portfolio v. Wells Fargo Bank, Nat'l Ass'n*,
   No. 14-cv-09371 (KPF) (SN), 2017 WL 9401102 (S.D.N.Y. Mar. 2, 2017)............................ 8

*Breaking Media, Inc. v. Jowers*,
   No. 21-mc-194 (KPF), 2021 WL 1299108 (S.D.N.Y. Apr. 7, 2021) ................................. 7, 14

*Centillion Data Sys., LLC v. Qwest Commc'ns Int'l, Inc.*,
   631 F.3d 1279 (Fed. Cir. 2011) ............................................................................................. 10

*Citizens Union of City of New York v. Att'y Gen. of New York*,
   269 F. Supp. 3d 124 (S.D.N.Y. 2017) .................................................................................... 7

*Cochran Consulting, Inc. v. Uwatec USA, Inc.*,
   102 F.3d 1224 (Fed. Cir. 1996) ............................................................................................... 8

*Confident Techs., Inc. v. Fandango Media, LLC*,
   No. LA 18-cv-03035, 2018 WL 6430539 (C.D. Cal. Aug. 20, 2018)..................................... 13

*Congoo, LLC v. Revcontent LLC*,
   No. 16-cv-401, 2017 WL 3584205 (D.N.J. Aug. 10, 2017).......................................... 9, 16, 17

*Drone Techs., Inc. v. Parrot S.A.*,
   838 F.3d 1283 (Fed. Cir. 2016) ............................................................................................... 8

*Generac Power Sys., Inc. v. Kohler Co.*,
   No. 11-CV-1120-JPS, 2012 WL 2049945 (E.D. Wis. June 6, 2012) ...................................... 17

*In re Deutsche Bank Tr. Co. Americas*,
   605 F.3d 1373 (Fed. Cir. 2010) ......................................................................................... 5

*KAIFI LLC v. Apple Inc.*,
   No. 21-mc-80171, 2021 WL 3727079 (N.D. Cal. Aug. 23, 2021) ......................................... 15

*Limelight Networks, Inc. v. Akamai Techs., Inc.*,
   572 U.S. 915 (2014) ............................................................................................... 10, 13

*Lyda v. CBS Corp.*,
   838 F.3d 1331 (Fed. Cir. 2016) ........................................................................................ 12

*Micro Motion, Inc. v. Kane Steel Co.*,
   894 F.2d 1318 (Fed. Cir. 1990) .................................................................................... 8, 15

*Neo Ivy Cap. Mgmt. LLC v. Savvysherpa LLC*,
   No. 18-mc-0094, 2019 WL 1435058 (D. Minn. Mar. 8, 2019) ............................................ 15

*New York Univ. v. E.piphany, Inc.*,
   No. 05-cv-1929 (LTS) (RLE), 2006 WL 559573 (S.D.N.Y. Mar. 6, 2006) ......................... 8, 17

*Realtime Data, LLC v. MetroPCS Texas, LLC*,
   No. 12-cv-1048, 2012 WL 1905080 (S.D. Cal. May 25, 2012) ............................................ 16

*telSPACE, LLC v. Coast to Coast Cellular, Inc.*,
   No. 2:13-cv-01477, 2014 WL 4364851 (W.D. Wash. Sept. 3, 2014) ...................................... 15

*Travelers Indem. Co. v. Metro. Life Ins. Co.*,
   228 F.R.D. 111 (D. Conn. 2005) ......................................................................................... 7

*UMB Bank, N.A. v. Sanofi*,
   No. 15-cv-8725 (GBD) (RWL), 2017 WL 6398628 (S.D.N.Y. Nov. 22, 2017) .................. 8, 14

*Viacom Int'l Inc. v. YouTube Inc.*,
   253 F.R.D. 256 (S.D.N.Y. 2008) .................................................................................... 8, 15

**Statutes**

35 U.S.C. § 271 ...................................................................................................................... 10

**Rules**

E.D. Tex. Pat. R. 3-1 ................................................................................................................ 3

Fed. R. Civ. P. 26 ..................................................................................................................... 7

Fed. R. Civ. P. 45 .................................................................................................................. 7, 8

## I.       INTRODUCTION

Firtiva demands that FreeWheel produce its most valuable and closely held source code even though it is irrelevant to Firtiva's patent infringement claims.[1]  FreeWheel is not a defendant in the underlying suit between Firtiva and Funimation, FreeWheel is not accused of infringing Firtiva's patent, and the operation of ***FreeWheel's*** system cannot possibly establish whether or not ***Funimation*** infringes the patent.  Firtiva thus fails to meet the most basic threshold of relevance, let alone show that its need justifies the undue burden that the disclosure of such highly confidential information would impose.

Firtiva's Complaint against Funimation does not name FreeWheel or allege facts plausibly showing that Funimation directs or controls FreeWheel.  Likewise, Firtiva's infringement contentions, in which Firtiva was required to explain its infringement theories with as much specificity as possible, accuse only Funimation of practicing the patented invention.  Whether or not FreeWheel independently practices certain claim steps is irrelevant to Firtiva's claims against Funimation as a matter of law.  Firtiva is not permitted to use its litigation against Funimation as an excuse to conduct an unwarranted investigation into FreeWheel's most sensitive material.  Accordingly, Firtiva's motion to compel should be denied.

## II.      BACKGROUND

### A.       FreeWheel

FreeWheel provides various video advertising technology platforms.  Declaration of Sam Khoury ("Khoury Decl.") ¶ 3.  One of FreeWheel's services is to act as an ad decisioning system that facilitates the delivery of ads.  *Id.* ¶ 4.  When a user watches video content through a content

---

[1] This opposition refers to Plaintiff Firtiva Corp. as "Firtiva", Defendant FreeWheel Media, Inc. as "FreeWheel", Funimation Global Group, LLC, the defendant in the underlying litigation, as "Funimation", and U.S. Patent No. 10,116,999 as "the '999 Patent."

provider and reaches an ad break, either a content provider or an intermediary acting on its behalf can make a request to FreeWheel's system. *Id.* ¶ 4. FreeWheel's technology matches an ad space (e.g., a 30 second ad slot) within the ad break to an advertiser and identifies an ad to fill in the ad space. *Id.*

### B.     Funimation

Funimation is a video streaming company focused on anime. *See* Mot. at 1; Ex. A to Declaration of Philip Sheng ("Sheng Decl."). Certain of Funimation's videos include advertisements. *See* Ex. B to Sheng Decl.

FreeWheel and Funimation are not affiliates or otherwise related companies. Khoury Decl. ¶ 5. FreeWheel has never contracted with Funimation, and Funimation is not a client of FreeWheel. *Id.* ¶ 6. Funimation has made no payments to FreeWheel, and FreeWheel has made no payments to Funimation. *Id.* ¶ 7. FreeWheel has never provided Funimation with any confidential technical information or source code. *Id.* ¶ 8.

A content provider such as Funimation may contract with other advertising intermediaries to manage the content provider's ad slots. Khoury Decl. ¶ 9. One such intermediary sent certain ad requests to FreeWheel on Funimation's behalf prior to April 2021. *Id.* ¶ 10. FreeWheel was not a party to any agreement between Funimation and the intermediary, and Funimation exercised no direction or control over how FreeWheel operated. *Id.*

### C.     Firtiva Accuses Funimation of Infringement

Firtiva purports to own the '999 Patent. Ex. A to Lee Decl. ¶ 2. On March 31, 2021, it filed a patent infringement suit in the United States District Court for the Eastern District of Texas. *Id.* Firtiva's Complaint alleges that Funimation infringes the '999 Patent. *Id.* ¶ 3. It does not identify any other entity that allegedly infringes or plead any facts regarding any particular third party. *Id.* ¶¶ 3, 10, 50–52. More specifically, Firtiva's Complaint nowhere

alleges that FreeWheel infringes the '999 Patent or is otherwise involved in Funimation's alleged infringement. *Id.*, *passim.*

Pursuant to the Rules of Practice for Patent Cases before the Eastern District of Texas, Firtiva served infringement contentions in the underlying litigation that were required to identify each allegedly infringing "apparatus, product, device, process, method, act, or other instrumentality . . . as specific[ally] as possible." E.D. Tex. Pat. R. 3-1. As in Firtiva's Complaint, the allegations in Firtiva's infringement contentions are limited to Funimation. They state that, "[t]he Accused Product is the Funimation service," and that "the Accused Product" practices each limitation of every claim. Ex. D to Sheng Decl. at 1, 5. There is no allegation in the contentions that any party other than Funimation infringes or participates in the infringement of the '999 Patent. *See id.* at 5–55. The contentions do not allege that FreeWheel infringes or is involved in Funimation's infringement. *Id.*

### D. Firtiva Demands FreeWheel's Most Sensitive Source Code

On October 19, 2021, Firtiva served FreeWheel with a third-party subpoena containing fourteen broad document requests that generally fall into three groups. Ex. B. to Lee Decl. at 5–6. The first group of requests relates to any agreements or payments between FreeWheel and Funimation. Ex. B. to Lee Decl. at 5 (Request Nos. 3–6). The second group of requests seeks "all user material documents" provided to Funimation or other customers, including instruction manuals, help pages, and user guides. *Id.* (Request Nos. 7–8). The third group of requests seeks FreeWheel's highly confidential source code and algorithms. *Id.* at 5–6 (Request Nos. 1–2, 9–14). For example:

- Request No. 2 seeks: "All FreeWheel source code used by you to provide services to Funimation."

- Request No. 12 seeks: "All algorithms utilized by FreeWheel for selecting an advertisement for presentation with a Funimation video."

- Request No. 13 seeks: "All source code utilized by FreeWheel for delivering an advertisement to a user and/or Funimation."

*Id.*

This third category of requests seeks FreeWheel's most sensitive and valuable information. Declaration of Mark Muehl ("Muehl Decl.") ¶ 6. While their scope is unclear, the requests could encompass millions of lines of computer code. *Id.* ¶ 4. The source code and algorithms they seek represent the most significant and substantial part of FreeWheel's business and comprise valuable trade secrets. *Id.* ¶¶ 5, 7. FreeWheel would suffer significant irreparable harm if they were ever disclosed, including because recipients of the code could recreate FreeWheel's technology and current product offerings, build directly competitive products, and undermine FreeWheel's business. *Id.* ¶ 8. Disclosure would also create novel security risks for FreeWheel and its clients and heighten the potential for abuse and fraud. *Id.*

Given its highly confidential nature, FreeWheel goes to great lengths to protect the source code and algorithms that Firtiva demands be produced. *Id.* ¶ 9. For example, FreeWheel strictly limits access such that only certain employees may access the source code repository, and particular individuals are only granted access to the specific modules on which they are working. *Id.* FreeWheel stores the source code and algorithms on dedicated servers running specialized software. *Id.* ¶ 10. To access the repository, an individual must be on FreeWheel's internal private network and using a company-issued device. *Id.* ¶ 9. All communications between the source code servers and authorized employee devices are encrypted, as are all communications between the source code servers themselves. *Id.* ¶ 10. All devices that may access the servers as well as the network used to access them are secured using two-factor authentication and are

subject to certain technology-based data loss prevention measures.  *Id.*  No individual that accesses FreeWheel's source code and algorithms is permitted to keep a copy of any portion of it, and FreeWheel keeps extensive logs regarding access and changes made.  *Id.* ¶¶ 9, 11.  Clients and business partners are not given access to FreeWheel's source code and algorithms.  *Id.* ¶ 12.

### E.      FreeWheel Objects to Firtiva's Subpoena

At Firtiva's request, FreeWheel identified its concerns regarding the Protective Order entered in the underlying litigation on November 5, 2021, prior to serving its full set of responses and objections.  Ex. C to Sheng Decl.  Among the concerns FreeWheel raised is that (1) the Protective Order does not allow third parties such as FreeWheel to designate any of its material under the strictest "Restricted Confidential – Source Code" designation, (2) Firtiva and Funimation in-house counsel may view information designated "Restricted Confidential – Attorneys' Eyes Only", and (3) that the patent prosecution bar extends only to Firtiva, not Funimation.  *Id.*[2]

On November 15, 2021, FreeWheel served its full set of responses and objections to Firtiva's subpoena.  As to requests seeking agreements or payments between FreeWheel and Funimation, FreeWheel responded that it is not aware of the existence of any responsive documents.  Ex. C to Lee Decl. at 5–11 (Responses to Request Nos. 3–6, 8).  As to the second group of requests, FreeWheel responded that it was not aware of any user material documents provided to Funimation, but that it was willing to meet and confer regarding Firtiva's request for

---

[2] A patent prosecution bar is a common provision in protective orders in patent cases that prohibits individuals who gain access to another party's confidential information from subsequently preparing and prosecuting patent applications in the same field for a period of time.  *See In re Deutsche Bank Tr. Co. Americas*, 605 F.3d 1373, 1381 (Fed. Cir. 2010).  One of the purposes of patent prosecution bars is to mitigate the risk that a party will improperly use another party's confidential technical information to draft patent claims covering the technology.  *See id.*

documents provided to customers.  *Id.* at 9–11 (Responses to Request Nos. 7, 8).[3]  As to the third

group of requests, FreeWheel objected because they requested irrelevant information that was

highly sensitive and burdensome to produce:

> FreeWheel . . . objects to this Request under Federal Rule of Civil Procedure
> 45(d)(3)(B)(i) because it seeks FreeWheel's Confidential Information for which
> any probative value is outweighed by the interest in preserving its confidentiality.
> FreeWheel further objects to this Request as overly broad and unduly burdensome
> because it is not proportional to the needs of this case and seeks information that
> is not relevant to this case, not relevant to any claim or defense of any party, and
> not reasonably calculated to lead to the discovery of admissible evidence.
> FreeWheel is not a party to the above-captioned matter and there has been no
> suggestion that FreeWheel infringes Firtiva's patent.  The Complaint does not
> identify FreeWheel or allege facts plausibly showing that Funimation encourages,
> directs, or controls FreeWheel to infringe Firtiva's patent.  Likewise, Firtiva's
> infringement contentions accuse only Funimation.  The Confidential Information
> sought by this Request is not relevant to proving that Funimation infringes
> Firtiva's patent, and Firtiva has not otherwise shown any particularized need for it.

*E.g.*, *id.* at 14–15 (Response to Request No. 12).[4]

### F.   Firtiva Refuses to Narrow Its Requests or Articulate Their Relevance

Counsel for Firtiva and FreeWheel met and conferred on November 18, 2021.  Sheng

Decl. ¶ 1.  As it does in its motion, Firtiva failed to explain with any particularity how

FreeWheel's source code is relevant to its infringement claims against Funimation.  *Id.*

Although counsel for FreeWheel indicated a willingness to discuss the possible production of

certain non-source code documents if Firtiva could explain what it needed to know about

FreeWheel's system and why, counsel for Firtiva refused to engage in such discussions and

---

[3] FreeWheel sought to meet and confer because the request seeks "[a]ll user material
documents provided by you to your customers when utilizing your services/products" and is
overbroad on its face.  Ex. C to Lee Decl. at 9–10 (Response to Request No. 7).

[4] While Firtiva characterizes these objections as "boilerplate," Mot. at 3, FreeWheel only
lodged them in response to the source code requests to which they applied.  Far from "boilerplate"
they state succinctly why Firtiva's requests are impermissible, as argued in the instant opposition.

asserted that FreeWheel is entitled to all of the requested FreeWheel source code.  *Id*.  Counsel

for Firtiva asserted that any concerns FreeWheel has regarding the production of source code are

addressed by the Protective Order, but they did not propose any amendments to the Protective

Order to address the concerns that FreeWheel had raised on November 5, 2021.  *Id.*; Ex. C to

Sheng Decl.

Firtiva filed the instant motion the day after the parties' meet and confer.  Dkt. 1.

## III.   LEGAL STANDARD

"Subpoenas issued under Rule 45 are subject to the relevance requirements of Rule

26(b)(1)."  *Breaking Media, Inc. v. Jowers*, No. 21-mc-194 (KPF), 2021 WL 1299108, at *5

(S.D.N.Y. Apr. 7, 2021).  Rule 26(b)(1) of the Federal Rules of Civil Procedure permits the

discovery of material only "if it is relevant to a party's claim or defense and proportional to the

needs of the case."  *Id.* ; Fed. R. Civ. P. 26(b)(1).  "The party seeking discovery bears the initial

burden of proving the discovery is relevant."  *Citizens Union of City of New York v. Att'y Gen. of

New York*, 269 F. Supp. 3d 124, 139 (S.D.N.Y. 2017).

In addition, "a party issuing a subpoena must take reasonable steps to avoid imposing an

undue burden on the person subject to the subpoena."  *Breaking Media*, 2021 WL 1299108, at *5.

Rule 45 requires a court to quash or modify a subpoena if it subjects a person to undue burden.

Fed. R. Civ. P. 45(d)(3)(A)(iv).  "Whether a subpoena imposes an 'undue burden' depends upon

such factors as relevance, the need of the party for the documents, the breadth of the document

request, the time period covered by it, the particularity with which the documents are described

and the burden imposed."  *Breaking Media*, 2021 WL 1299108, at *5–6.  "[C]ourts also give

special weight to the burden on non-parties of producing documents to parties involved in

litigation."  *Id.* at *6 (quoting *Travelers Indem. Co. v. Metro. Life Ins. Co.*, 228 F.R.D. 111, 113

(D. Conn. 2005)); *see also UMB Bank, N.A. v. Sanofi*, No. 15-cv-8725 (GBD) (RWL), 2017 WL

6398628, at *1 (S.D.N.Y. Nov. 22, 2017) ("[T]he Court should be particularly sensitive to weighing the probative value of the information sought against the burden of production on the nonparty."); *Blackrock Allocation Target Shares: Series S Portfolio v. Wells Fargo Bank, Nat'l Ass'n*, No. 14-cv-09371 (KPF) (SN), 2017 WL 9401102, at *1 (S.D.N.Y. Mar. 2, 2017) (same).

A court may quash or modify a subpoena if it requires disclosing trade secret or other confidential research, development, or commercial information.  Fed. R. Civ. P. 45(d)(3)(B)(i). "[I]t is well recognized among . . . courts that source code requires additional protections to prevent improper disclosure because it is often a company's most sensitive and most valuable property." *Drone Techs., Inc. v. Parrot S.A.*, 838 F.3d 1283, 1300 n.13 (Fed. Cir. 2016).[5]  It is of "enormous commercial value.  Someone with access to it could readily perceive its basic design principles, and cause catastrophic competitive harm." *Viacom Int'l Inc. v. YouTube Inc.*, 253 F.R.D. 256, 259 (S.D.N.Y. 2008).  Accordingly, courts require a showing that there are no less burdensome alternatives to the production of source code (assuming the source code is relevant in the first place).  *E.g.*, *Cochran Consulting, Inc. v. Uwatec USA, Inc.*, 102 F.3d 1224, 1231 (Fed. Cir. 1996) (vacating order regarding source code because "there are alternative sources of the necessary information"); *New York Univ. v. E.piphany, Inc.*, No. 05-cv-1929 (LTS) (RLE), 2006 WL 559573, at *3 (S.D.N.Y. Mar. 6, 2006) ("[P]laintiffs, of course, may first be required to demonstrate that they exhausted other ways of exploring potential infringement [before requesting source code]."); *Congoo, LLC v. Revcontent LLC*, No. 16-cv-401, 2017 WL 3584205,

---

[5] Because Firtiva argues that the discovery it seeks is relevant and necessary to its patent infringement claims, a determination of relevance and need implicates the substantive law of patent infringement governed by the Court of Appeals for the Federal Circuit.  *Micro Motion, Inc. v. Kane Steel Co.*, 894 F.2d 1318, 1326 n.8 (Fed. Cir. 1990) ("A determination of relevance implicates substantive patent law. Therefore, we look to Federal Circuit law rather than regional circuit law in discussing relevance."); *Drone Techs.*, 838 F.3d at 1299-1300 (analyzing relevance and need of discovery related to patent infringement claims under Federal Circuit law).

at *3 (D.N.J. Aug. 10, 2017) ("[W]hen alternatives are available, a court will not be justified in ordering disclosure [of source code].").

## IV.    ARGUMENT

Firtiva's subpoena fails to meet Rule 26's threshold relevancy requirement because the manner in which **FreeWheel's** system operates has no bearing on Firtiva's allegations that **Funimation** infringes its patent.  Moreover, even if there were some tangential relevance to Firtiva's requests, Firtiva's motion does not attempt to weigh its purported need against the undue burden to which FreeWheel would be subject if it had to produce such a great deal of highly confidential material.  The Protective Order in the underlying litigation does not mitigate these issues, and FreeWheel should not be compelled to produce its most sensitive material in a litigation in which it plays no part.

### A.    The Requested Discovery Is Not Relevant

The information that Firtiva seeks concerning the operation of FreeWheel's system, including its source code, is not relevant to the underlying litigation because there is no allegation that FreeWheel infringes the '999 Patent.  In order to prove infringement, Firtiva must show that a single entity is responsible for practicing each claim element, and the only entity that Firtiva alleges infringes is Funimation.  Firtiva points to no evidence to suggest that what FreeWheel does can be attributable to Funimation, and it cannot be.  Thus, it does not matter whether or not FreeWheel independently performs certain steps recited in the patent.  Mot. at 6–7 (accusing FreeWheel of performing the "receiving," "retrieving," "searching," and "transmitting" steps recited in claim 18 of the '999 Patent).

"[Patent] infringement may be committed either directly or indirectly."  *Ave. Innovations, Inc. v. E. Mishan & Sons Inc.*, No. 16-cv-3086 (KPF), 2019 WL 4857468, at *6 (S.D.N.Y. Oct. 2, 2019).  Direct infringement occurs where a person "without authority [imports,] makes, uses,

offers to sell, or sells any patented invention."  35 U.S.C. § 271(a).  Indirect infringement occurs

where a person induces or contributes to the direct infringement of another.  *Id.* § 271(b)–(c).

A patent method claim is defined by a number of steps.  *Limelight Networks, Inc. v.

Akamai Techs., Inc.*, 572 U.S. 915, 921 (2014).  "[T]he patent is not infringed unless all the steps

are carried out."  *Id.*; *see also Aro Mfg. Co. v. Convertible Top Replacement Co.*, 365 U.S. 336,

344 (1961) (it is well settled "that [a] patent covers only the totality of the elements in the claim

and that no element, separately viewed, is within the grant").  Moreover, for there to be

infringement of a method claim, "the performance of all the patent's steps [must be] attributable

to . . . one person."  *Limelight*, 572 U.S. at 922.  Thus, where one person carries out some steps

of a method claim and another carries out the remaining steps, there typically is no infringement.

*See id.*[6]

Only in limited situations can "the acts of one [be] attributable to the other such that a

single entity is responsible for the infringement."  *Akamai Techs., Inc. v. Limelight Networks,

Inc.*, 797 F.3d 1020, 1022 (Fed. Cir. 2015).  These scenarios are referred to as "divided" or "joint"

infringement, and are limited to circumstances "(1) where [one] entity directs or controls others'

performance, and (2) where the actors form a joint enterprise."  *Id.*  Such a determination is made

using "general principles of vicarious liability," with the additional condition that divided

infringement can be found "when an alleged infringer conditions participation in an activity or

receipt of a benefit upon performance of a step or steps of a patented method and establishes the

manner or timing of that performance."  *Id.* at 1022–23.

---

[6] Firtiva's motion only references claim 18 of the '999 Patent, which is a method claim.
Mot. at 6.  However, the analysis is similar with respect to system claims, which are defined by
structural features.  A patentee must show that a single person imports, makes, uses, offers for
sale or sells "each and every element of the system claim" or "control[s] the system as a
whole."  *Centillion Data Sys., LLC v. Qwest Commc'ns Int'l, Inc.*, 631 F.3d 1279, 1282, 1284
(Fed. Cir. 2011).

Here, Firtiva's Complaint in the underlying litigation names only Funimation and does not allege that anyone other than Funimation infringes the '999 Patent.  *See generally* Ex. A to Lee Decl.  Likewise, Firtiva's infringement contentions identify "Funimation's online and mobile streaming video service" as the only "Accused Product" and do not mention any other entities besides Funimation.  Ex. D to Sheng Decl. at 1, 5.  Indeed, Firtiva's motion fails to identify a single filing from the underlying litigation that identifies FreeWheel as accused of anything.  Accordingly, Firtiva must prove that Funimation performs the claim steps, not FreeWheel.

Firtiva's brief baldly asserts that FreeWheel contracts with Funimation and acts as its agent, presumably to suggest that FreeWheel's actions may be attributable to Funimation.  Mot. at 6–7.  Firtiva cites no evidence in support of that assertion, however, and it is not true.  FreeWheel and Funimation are wholly unrelated companies.  Khoury Decl. ¶ 5.  FreeWheel has never contracted with Funimation, and Funimation is not a FreeWheel client.  *Id.* ¶ 6.  FreeWheel has never received payments from Funimation (nor made any payments to Funimation), nor has it ever provided Funimation with any confidential technical information or source code.  *Id.* ¶¶ 7–8.  Funimation has never exercised any direction or control over how FreeWheel operates and the companies certainly cannot be said to be engaged in any joint enterprise.[7]

Instead of providing evidence of an alleged relationship between FreeWheel and Funimation—such as a contract, which Firtiva would have obtained through party discovery of Funimation had one existed—Firtiva points to "fwmrm.net," which is allegedly buried within

---

[7] "A joint enterprise requires proof of four elements: (1) an agreement, express or implied, among the members of the group; (2) a common purpose to be carried out by the group; (3) a community of pecuniary interest in that purpose, among the members; and (4) an equal right to a voice in the direction of the enterprise, which gives an equal right of control."  *Akamai*, 797 F.3d at 1023.

lines of computer code in Figures 8 and 10 of its Complaint.  Mot. at 2, 7.  Figure 8 is

reproduced below:

**Figure 8**

Firtiva cannot seriously contend that such an obscure reference to a domain constitutes an

allegation that FreeWheel infringes or performs any of the claims steps.  The code is not

FreeWheel's nor does it reflect functions performed by FreeWheel, and the Complaint's

description of the figures do not mention FreeWheel or fwmrm.net.   Ex. A to Lee Decl. ¶ 33.[8]

To the contrary, the Complaint adds boxes to highlight entirely different pieces of the code.  *Id.*

In any event, that another third party may have arranged for requests to be made to

FreeWheel's system on Funimation's behalf does not make FreeWheel an agent of Funimation

or mean FreeWheel's actions are otherwise attributable to Funimation.  *See Confident Techs., Inc.*

---

[8] Firtiva misquotes *Wheel Group* to assert that "FreeWheel's argument that it is not
mentioned or alluded to in Firtiva's complaint is also 'completely unpersua[sive].'"  Mot. at 8.
*Wheel Group* was not a patent case and did not involve allegations of indirect or joint
infringement, which the Federal Circuit requires to be pled with more than conclusory
allegations that a party directed or controlled "unnamed third parties."  *Lyda v. CBS Corp.*, 838
F.3d 1331, 1340 (Fed. Cir. 2016).

*v. Fandango Media, LLC*, No. LA 18-cv-03035, 2018 WL 6430539, at *4 (C.D. Cal. Aug. 20, 2018) (holding that "a screenshot of Defendant's website showing a ReCAPTCHA matrix and underlying ReCAPTCHA script that mentions Google" is insufficient to support a claim of divided infringement between Defendant and Google).  If the simple receipt of a request were sufficient to render an entity's actions attributable to the sender, then the scope of vicarious liability would be virtually limitless.

FreeWheel's technical information is similarly irrelevant to Firtiva's allegations of indirect infringement.  Mot. at 2.  "Indirect infringement, whether inducement to infringe or contributory infringement, can only arise in the presence of direct infringement." *Berall v. Pentax of Am., Inc.*, No. 10-cv-5777 (LAP), 2021 WL 3934200, at *3 n.5 (S.D.N.Y. Sept. 2, 2021) (quoting *Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1272 (Fed. Cir. 2004).  Thus, to prove Funimation's indirect infringement of claim 18, for example, Firtiva must show that another entity performed each and every claim step.  *Limelight*, 572 U.S. at 921.  The only way in which FreeWheel technical information could be relevant to such a claim is if Firtiva alleged that FreeWheel performed each step.  However, Funimation has made no such allegation in the underlying litigation or in its Motion.  Ex. A to Lee Decl., *passim*; Ex. D to Sheng Decl., *passim*; Mot. at 6–7 (alleging that FreeWheel performs only certain steps of claim 18).  In the underlying litigation, Firtiva alleges that Funimation's Accused Product practices every claim step.  Ex. A to Lee Decl., *passim*; Ex. D to Sheng Decl., *passim*.  And in the instant motion, Firtiva alleges that FreeWheel practices only four of them.  Mot. at 6–7.  Since FreeWheel's alleged performance of a subset of the claim steps cannot constitute direct infringement, it cannot be relevant to an indirect infringement claim.

In sum, there cannot be patent infringement—direct or indirect—unless there is infringement attributable to a single entity.  The only entity that Firtiva identifies as infringing the '999 Patent is Funimation.  Because FreeWheel's actions cannot be attributed to Funimation, the manner in which FreeWheel's systems operate is irrelevant and not properly subject to discovery.  *See Breaking Media, Inc.*, 2021 WL 1299108, at *5–6.

### B.  Firtiva Does Not Show Any Need Justifying the Undue Burden Its Requests Place on FreeWheel

Even if the requested discovery were somehow tangentially relevant to Firtiva's claims in the underlying litigation (which it is not), Firtiva's motion would still fail because Firtiva fails to explain how its demands are at all proportional to the needs of its case or the burden they place on FreeWheel.  Far from being "particularly sensitive" to that burden, Firtiva seeks a breathtaking amount of highly confidential information without explaining what it really needs, why it needs it, and why it could not get that information through other means.  *See UMB Bank, N.A.*, 2017 WL 6398628, at *1.

On their face, Firtiva's requests are extraordinarily broad and fail to describe the information Firtiva allegedly needs with any particularity.  *Breaking Media*, 2021 WL 1299108, at *5–6.  For example, Firtiva's Request No. 2 seeks production of "*[a]ll* FreeWheel source code used . . . to provide services to Funimation." Ex. B. to Lee Decl. at 5 (emphasis added).  That could be read to include every line of code used by the ad decisioning platform that responded to requests made on Funimation's behalf any time prior to April 2021.  Request No. 12 then seeks "*[a]ll* algorithms utilized by FreeWheel for selecting an advertisement for presentation with a Funimation video," which lies at the heart of FreeWheel's service.  *Id.* at 6 (emphasis added).  And Request No. 13 is not even limited to Funimation, seeking "*[a]ll* source code utilized by FreeWheel for delivering an advertisement ***to a user*** and/or Funimation."  *Id.* (emphases added).

Firtiva thus does not simply seek a limited set of documents sufficient to show whatever specific information it allegedly needs for the underlying litigation.  Rather, its requests seek "all" of the source code and algorithms that represent the most significant and substantial part FreeWheel's business.  Muehl Decl. ¶¶ 4, 5.  The requests could encompass millions of lines of computer code that FreeWheel goes to great lengths to keep secure and the disclosure of which would cause significant irreparable harm.  *Id*. ¶¶ 4, 8–12.  To produce such code would require burdensome collection procedures and security measures, and even then there would be significant risk to FreeWheel's most sensitive and valuable information.  Courts regularly deny discovery that imposes such a burden.  *Neo Ivy Cap. Mgmt. LLC v. Savvysherpa LLC*, No. 18-mc-0094, 2019 WL 1435058, at *6 (D. Minn. Mar. 8, 2019) (denying subpoena request for nonparty's source code as "overbroad and unduly burdensome"); *KAIFI LLC v. Apple Inc.*, No. 21-mc-80171, 2021 WL 3727079, at *2 (N.D. Cal. Aug. 23, 2021) (denying request for party's source code where "production of the source code . . . would impose a significant burden on Apple and would place at some risk source code that Apple considers highly confidential").

Firtiva's assertion that "any confidentiality concerns are mitigated by the Protective Order entered in the underlying Patent Action" is wrong both as a general matter and in relation to the specific protective order entered in the underlying litigation.  Mot. at 8.  "[A] protective order is not a substitute for establishing relevance or need."  *Micro Motion*, 894 F.2d at 1325; *Viacom*, 253 F.R.D. at 260 ("[T]he protections set forth in the stipulated confidentiality order are careful and extensive, but nevertheless not as safe as nondisclosure.  There is no occasion to rely on them, without a preliminary proper showing justifying production of the search code."); *telSPACE, LLC v. Coast to Coast Cellular, Inc.*, No. 2:13-cv-01477, 2014 WL 4364851, at *5 (W.D. Wash. Sept. 3, 2014) ("The Court further finds that reliance on the parties' protective

order is insufficient to warrant disclosure in light of Plaintiff's inadequate showing of relevance and the burden that disclosure of the source code would place on Defendant."). Moreover, "no protective order could possibly be devised which could guarantee security for the material." *Bell Atl. Bus. Sys. Servs., Inc. v. Hitachi Data Sys. Corp.*, No. M8-85, 1995 WL 13115, at *1 (S.D.N.Y. Jan. 13, 1995). This is particularly true where a nonparty's highly confidential source code is at issue. *Congoo*, 2017 WL 3584205, at *4 ("[T]he Court finds that [the source code's] highly confidential nature is such that it cannot be adequately safeguarded by a Discovery Confidentiality Order and therefore outweighs the need for production."); *Aeritas, LLC v. Delta Airlines, Inc.*, No. 11-cv-00969-SLR, 2013 WL 454452, at *3 (N.D. Ga. Feb. 7, 2013) ("Although a protective order is in place in the underlying lawsuits, a non-party's source code marks an exception to that general rule, and here it would constitute an undue burden on NCR to require the source code's production."); *Realtime Data, LLC v. MetroPCS Texas, LLC*, No. 12-cv-1048, 2012 WL 1905080, at *3 (S.D. Cal. May 25, 2012) ("Ortiva is not a party and not alleged to be an infringer. Ortiva's concerns regarding the security of its source code, despite the protective order, cannot be ignored.").

The burden and risk to FreeWheel inherent in producing its source code would thus be significant notwithstanding the strictest of protective orders. But it is even greater here, where the Protective Order in the underlying litigation has significant deficiencies. *See* Ex. C to Sheng Decl. For example, the Protective Order does not allow third parties such as FreeWheel to designate any of its material as "Restricted Confidential – Source Code." Ex. E to Sheng Decl. ¶ 21. This means that FreeWheel's source code would not be entitled to the same protections as Firtiva and Funimation source code. Moreover, in-house counsel for both parties is permitted to view "Restricted Confidential – Attorneys' Eyes Only" information, and the prosecution bar

does not extend to Funimation's counsel.  *Id*. ¶ 11.  Firtiva failed to address any of these concerns in the parties' meet-and-confer or in its brief, yet nonetheless demands that FreeWheel produce its most sensitive source code.

In its response to Firtiva's subpoena, FreeWheel indicated a willingness to discuss the production of certain non-source code documents if Firtiva could explain what it needed to know about FreeWheel's system and why.  Ex. C to Lee Decl. at 9–10.[9]  However, Firtiva refused to engage in such discussions, asserting that it is entitled to all of the requested FreeWheel source code.  Sheng Decl. ¶ 1.  That is manifestly not so, and Firtiva tellingly does not cite a single case ordering production of a nonparty's source code.  At a minimum, Firtiva was obligated to engage with FreeWheel to identify what particularized need would be met by FreeWheel's source-code production, explain how the vast amount of source code that it seeks is the only means by which that identified need may be met, and demonstrate how and why there are no less burdensome alternatives.  *E.g.*, *E.piphany*, 2006 WL 559573, at *3; *Congoo*, 2017 WL 3584205, at *3; *Generac Power Sys., Inc. v. Kohler Co.*, No. 11-CV-1120-JPS, 2012 WL 2049945, at *2 (E.D. Wis. June 6, 2012).  Firtiva has not even attempted to make such a showing.  Its motion should be denied.

## V.    CONCLUSION

For the reasons set forth herein and in the accompanying exhibits and declarations, FreeWheel respectfully requests that the Court deny Firtiva's motion to compel.

---

[9] Firtiva's assertion that FreeWheel "refused to produce any documents responsive to the subpoena," Mot. at 1, is false.

Dated: December 6, 2021                     Respectfully submitted,

/s/ David J. Lisson
Davis Polk & Wardwell LLP
David J. Lisson*
Philip T. Sheng*
1600 El Camino Real
Menlo Park, California 94025
(650) 752-2000

Davis Polk & Wardwell LLP
Alena Farber
450 Lexington Avenue
New York, New York, 10017
(212) 450-4000

*admitted pro hac vice

Attorneys for Defendant FreeWheel Media, Inc.